UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| ALLTEL COMMUNICATIONS, LLC, | ) ) | CIV. 10-5011-JLV |
| | ) | ORDER DENYING MOTION |
| Plaintiff, | ) | TO DISMISS, DENYING |
| | ) | MOTION FOR PRELIMINARY |
| vs. | ) | INJUNCTION, DENYING |
| | ) | MOTION TO INTERVENE, |
| OGLALA SIOUX TRIBE, | ) | AND ORDER COMPELLING |
| | ) | ARBITRATION |
| Defendant. | ) | |

## INTRODUCTION

On February 17, 2010, plaintiff ("Alltel" or plaintiff) filed a complaint (Docket 1) alleging that defendant, Oglala Sioux Tribe, (the "Tribe" or defendant) is in breach of an arbitration provision contained in the Tate Woglaka Service Agreement (the "Service Agreement") between the Tribe and WWC License LLC ("WWC LCC").  (Docket 1-1).  The complaint sought injunctive relief to prohibit the defendant from conducting further proceedings in an action filed in Oglala Sioux Tribal Court ("Tribal Court") captioned "Oglala Sioux Tribal Court, Petitioners v. Alltel Communications, LLC, and Verizon Wireless, LLC, Respondents," Civ. #09-0673.

Plaintiff simultaneously filed a motion for temporary restraining order and preliminary injunction.  (Docket 4).  A hearing on Alltel's temporary restraining order motion was held on February 18, 2010.  The Tribe received

1

notice of the temporary restraining order hearing and participated.  On

March 1, 2010, the court entered an order denying the motion for a

temporary restraining order.  (Docket 16).  In that order, the court retained

jurisdiction but stayed any further action "for a period of [time] to allow the

Oglala Sioux Tribal Court to determine whether it had jurisdiction to

consider the [Tribe's] petition for preliminary injunction . . . with the proviso

that this court will consider lifting the stay if it is satisfied that undue

delays are causing irreparable harm to either party through the tribal court

exhaustion process."  Id.

On March 19, 2010, defendant filed its answer.  (Docket 27).  Among

its affirmative defenses, defendant asserts the Tribe enjoys sovereign

immunity against plaintiff's complaint.  (Docket 27, ¶ 14).  Defendant filed a

motion to dismiss (Docket 33) asserting, pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6), the court does not have subject matter jurisdiction and the

complaint fails to state a claim on which relief may be granted.

While defendant's motion to dismiss was pending, the Tribe consented

to the filing of plaintiff's first amended complaint.  (Docket 40).   The

amended complaint contained three counts: Count I: declaratory judgment

under 28 U.S.C. § 2201 that the Tribal Court lacks jurisdiction to enjoin

Alltel or any defendant named in case Civ. Nos. 09-0673 or 10-0104 from

selling or transferring assets used to provide telecommunications service on

the Pine Ridge Indian Reservation; Count II: declaratory judgment of arbitrability and order compelling arbitration under 9 U.S.C. § 4; and Count III: antisuit injunction precluding the Tribe from proceeding in tribal court. Id.

Plaintiff filed its memorandum in opposition to defendant's motion to dismiss (Docket 41) and defendant filed a renewed motion to dismiss (Docket 56) in response to plaintiff's amended complaint.

On April 22, 2010, plaintiff filed its motion requesting a date certain for hearing on its motion for a preliminary injunction. (Docket 36). In that motion, plaintiff reported the Tribal Court had not yet held a hearing on the jurisdictional issue, but that Alltel wished to proceed in this court on its motion for preliminary injunction. (Docket 36). The court set a hearing on the motion for Friday, May 7, 2010. (Docket 42).

On May 6, 2010, AT&T Mobility LLC ("AT&T") filed a motion to intervene as a plaintiff in the above-captioned matter. (Docket 69). Alltel consented to this motion. Id. The Tribe's time to respond to the motion has not yet expired.

On May 6, 2010, Chief Judge Patrick Lee of the Oglala Sioux Tribal Court filed a declaration advising the court that a hearing had been held on April 29, 2010, on Alltel's motion to dismiss. (Docket 62). Chief Judge Lee was still reviewing the extensive record and researching the applicable case

law to determine whether the Tribal Court had jurisdiction to consider the Tribe's petition for preliminary injunction.  Id.  Chief Judge Lee indicated he would render a decision as soon as possible.  Id.

The hearing on Alltel's motion for preliminary injunction was held on May 7, 2010.  Out of deference to the Tribal Court, this court advised counsel it intended to defer decision on any pending matters until it received Chief Judge Lee's decision on Tribal Court jurisdiction.

On May 13, 2010, Chief Judge Lee issued an order denying Alltel's motion to dismiss the Tribal Court litigation.  That order was filed with the court.  (Docket 80-1).  Plaintiff's motions for preliminary injunction (Dockets 4 and 40) and defendant's motions to dismiss (Dockets 33 and 56) are ripe for resolution by the court.

## FACTUAL BACKGROUND

The following factual statement is drawn from the testimony and exhibits offered at the May 7, 2010, hearing, the amended complaint (Docket 40), defendant's answer to amended complaint (Docket 75), plaintiff's memorandum in support of motion for preliminary injunction (Docket 47), the declaration of Attorney Wiezcorek in support of plaintiff's motion for preliminary injunction (Docket 49), and defendant's brief (Docket 57) in support of its renewed motion to dismiss.  While the interpretation or applicability of these facts to the motions presently before the court may be

disputed, the parties generally are in agreement about the factual setting in this case.

On August 21, 2000, the Tribe and WWC LLC entered into the Service Agreement. (Dockets 40-2 and 75 ¶ 3). The Service Agreement sets forth the terms under which WWC LLC provides wireless telephone service on the Pine Ridge Indian Reservation (the "Reservation"). In 2005, Alltel Corporation acquired the parent company of WWC LLC. (Docket 47, p. 15). WWC LLC's independent existence, however, was not altered, and WWC LLC continued providing service to the Tribe under the Service Agreement. Id. at 15-16. Alltel became an intermediate parent of WWC LLC.[1] Id. at 16.

Alltel and Cellco Partnership d/b/a Verizon Wireless ("Verizon") agreed to a merger in June of 2008. Id. As a result of antitrust review, the United States Department of Justice required the merged entity to divest operations in markets where Alltel and Verizon had significant overlap, including all of Alltel's markets in South Dakota. The divestiture requirements were embodied in a Consent Decree in United States v. Verizon Communications, Inc., 607 F. Supp. 2d 1 (D.D.C. 2009).[2]

---

[1]An intermediate parent company is one which holds a majority of the stock of a subsidiary which holds the majority of the stock of its own subsidiary.

[2]For easy of reference, the District of Columbia decision will be referred to as the "Consent Decree" without further citation to F. Supp. 2d.

Once the Verizon - Alltel merger closed in January of 2009, Verizon proceeded with an auction for the sale of various groups of assets defined in the Consent Decree. Under the Consent Decree, Verizon was required to divest all of Alltel's markets in South Dakota to a single purchaser.[3]

In an undated letter, Joe Red Cloud, Development Chairman of the Office of Economic Development for the Tribe "requested that Verizon divest the wireless assets currently held by Alltel and located within the exterior boundaries of the Pine Ridge reservation" to the Tribe. (Docket 40-5). The Tribe requested the assets, including cell sites, antenna towers, electronics and related equipment at a number of different sites, as well as microwave facilities and switching equipment, be sold to the Tribe for one dollar ($1.00). Id. In response, Verizon advised the Tribe that under the Consent Decree all of the South Dakota assets must be sold to a single buyer and encouraged the Tribe to "partner with someone so that together they could bid on and acquire the entire cluster . . . ." (Docket 40-9). The Tribe did not submit any bids in that process. (Docket 47, p. 17).

---

[3]Paragraph I of the Consent Decree directed that the "Divestiture Assets listed in each numbered subsection below shall be divested together to a single Acquirer, provided that it is demonstrated to the sole satisfaction of plaintiff United States . . . that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint . . . ." Verizon, 607 F. Supp. at 7.

On May 8, 2009, AT&T and Verizon announced that Verizon would sell to AT&T the assets to be divested in 18 states–including South Dakota– for $2.35 billion. (Docket 47-2 ¶ 4). For customers in the acquired markets, AT&T, as a wireless carrier with greater resources than Verizon, will offer "broader choices of services, rate plans, handsets and data devices (including those with advanced capabilities), and also expanded network coverage." (Docket 47-2 ¶ 5).

On October 21, 2009, the Tribe filed a "Petition for Preliminary Injunction and Request for Hearing" against Alltel and Verizon Wireless LLC in Tribal Court, Civ. 09-0673. (Dockets 40 ¶ 32 and 75 ¶ 33). The petition sought the issuance of a preliminary injunction prohibiting Alltel "from selling the wireless spectrum, antenna towers, and associated electronics located on the Pine Ridge reservation . . . ." (Docket 40-10 at pp. 5-6). Two licenses for spectrum issued by the Federal Communications Commission ("FCC"), areas defined by the FCC as Cellular Market Areas ("CMAs") 638 and 639, cover not only the Reservation, but a significant portion of southwestern South Dakota.[4] (Docket 47-2 ¶ 6).

---

[4]"Based upon U.S. Bureau of the Census figures . . . it appears that at least 76% of the population in CMAs 638 and 639 resides <u>outside</u> the Reservation . . . . there are roughly 40,000 legacy Alltel Corporation customers in CMAs 638 and 639 that will be transitioned to AT&T. Only about 11,000 of those customers, or less than 30%, reside on the Pine Ridge Reservation." (Docket 47-2 ¶ 6) (emphasis in original).

Alltel approached the Tribe to discuss resolution of the Tribe's issues and together they agreed to postpone the Tribal Court hearing with no further proceedings in Tribal Court to occur without seven days advance written notice.[5]  (Docket 40-6).  On January 6, 2010, Alltel made a written request of the Tribe and its Economic Development Office to consent to the assignment of the Service Agreement, under Section 20(J), to a subsidiary of AT&T under the divestiture requirements of the Consent Decree.  (Docket 8-10).  On January 13, 2010, Mr. Red Cloud, on behalf of the Tribe and its Utilities Commission ("OST PUC"), wrote to Alltel declining the invitation to consent to the assignment.  (Docket 8-11).  Mr. Red Cloud renewed the earlier request that the Service Agreement assets be transferred to the Tribe. (Docket 8-12).

Over the course of the next several weeks Alltel and the Tribe met or corresponded, attempting to resolve the Tribe's issues with the assignment of the Service Agreement.  On February 15, 2010, the Tribe issued a letter to Alltel indicating that a hearing in Tribal Court would occur on February 18, 2010, concerning "matters relating to the compliance with the [Service Agreement] . . . and the transfer of various telecommunications assets on Tribal land . . . to AT&T."  (Docket 40-3).  Later that evening Alltel's counsel

<hr />

[5]The parties also agreed that Verizon Wireless, LLC, was not a legal entity and could be dismissed from the Tribal Court litigation.  (Docket 40-6).

e-mailed the Tribe's attorney asserting that the Tribe's intention to hold a

hearing in Tribal Court was a breach of the earlier stipulation which

required seven days written notice. The Tribe's attorney issued a notice of

hearing on February 17, 2010, the day before the scheduled hearing.[6]

(Docket 40-4).

On February 17, 2010, Alltel filed its original complaint (Docket 1)

and additional submissions in support of its motion for a temporary

restraining order and preliminary injunction in federal district court. The

court issued an order (Docket 10) setting a hearing on Alltel's motion for

temporary restraining order ("TRO") for the next morning and required Alltel

to serve its filed documents on the Tribe thereby giving notice of the TRO

hearing. At the TRO hearing the Tribe's counsel advised the court the

hearing scheduled in Tribal Court for that afternoon was being canceled

because of inclement weather and would be rescheduled for the following

week. (Docket 16). Defense counsel confirmed the Tribe would "give

plaintiff not less than seven (7) days advance notice of the next tribal court

proceeding and the sole purpose of that proceeding will be to address

whether the tribal court has jurisdiction to consider the petition for

preliminary injunction." Id. at ¶ 5. Because there was no urgency, as

---

[6]This notice contained a declaration that "[f]ailure to abide by this Notice of Hearing may result in a Warrant for your legal representative's arrest." (Docket 40-4).

required by Fed. R. Civ. P. 65(b), the court denied Alltel's motion for a TRO, but retained jurisdiction. Id.

While the action before this court and the Tribal Court proceeding Civ. 09-0673 were pending, the OST PUC, represented by one of the attorneys who appeared before this court during the TRO hearing, initiated a new Tribal Court proceeding Civ. 10-0104, captioned Oglala Sioux Tribe v. Alltel Communications, LLC and Cellco Partnership d/b/a Verizon Wireless. (Docket 47-9). This March 1, 2010, Tribal Court filing also sought a preliminary injunction "[t]hat transfer of property subject to regulation by the Oglala Sioux Tribe Public Utilities Commission be stayed pending Tribal approval of the assignment of the [Service Agreement] or an agreement related to the transfer of property on the Reservation." Id. at pp. 6-7.

On April 12, 2010, the Tribe's attorney filed a First Amended Petition for Preliminary Injunction in Tribal Court Civ. 09-0673. (Docket 40-19). This first amended petition again sought a "temporary restraining order and permanent injunction enjoining the Respondents (Alltel Communications) from selling or transferring the assets acquired under the [Service Agreement]." Id. at p. 4. Chief Judge Lee held a hearing in that action on April 29, 2010.

In support of Alltel's motion for preliminary injunction before this court, Mr. Stephen Linskey submitted a declaration (Docket 47-2) and

testified at the May 7, 2010, hearing.  Mr. Linskey is the Executive Director of Business Development for Verizon.  Preliminary Injunction Hearing Transcript, p. 44 (hereinafter "PIT at p. ___").  Over the past ten years he has been responsible for managing approximately twenty-five system transfers through a competitive bidding process, similar to the Verizon - AT&T divestiture.  Id.  He is responsible for the transition of the wireless communications systems in all eighteen states under the Consent Decree. Id.  In the court's opinion, Mr. Linskey is an expert in the field of wireless communications and management of these systems, with substantial responsibilities and experience in this area.  (PIT, p. 68).

In this divestiture, AT&T acquired 79 out of 105 markets for a purchase price of $2.35 billion.  (PIT, p. 45).  The Oglala Sioux Tribe and OST PUC did not submit a bid to purchase assets in this divestiture process.  (PIT, p. 46).  In Mr. Linskey's view, FCC approval of the divestiture to AT&T is going to be accomplished around June 1, 2010.  (PIT, p. 54).  The pending Tribal Court litigation is the only matter potentially holding up closing on the $2.35 billion transaction.  Closing must occur within five days after FCC approval.  Id.

If this litigation is not resolved before closing, it is anticipated that the regulators will require CMAs 638 and 639 be held back and Verizon would lose approximately $30 million in the purchase price from AT&T.  (PIT, p.

11

56). Based on Mr. Linskey's experience there is no way these two small markets would independently bring a price near that again. Id. "[T]he value to AT&T is that [these markets] provide a strategic, operational, ubiquitous network that covers throughout the southwestern part of South Dakota. And without being part of a larger regional statewide and national network, the value to any other purchaser would be significantly lower." (PIT, pp. 56-7).

Mr. Linskey testified there has been no transfer of the Service Agreement from WWC LLC to Alltel, nor has there been a transfer of the Service Agreement to Verizon. (PIT, p. 71). Alltel, as the intermediate parent, has the right to direct WWC LLC to assign the Service Agreement to AT&T under the Consent Decree. (PIT, p. 72).

On May 13, 2010, Chief Judge Lee entered an order asserting the jurisdiction of the Tribal Court to consider the Tribe's request for injunctive relief in Civ. 09-0673. (Docket 80-1). The significant elements of Judge Lee's order are as follows:

> 1.   Tribal Court customarily accepts petitions for preliminary injunctions and schedules them for hearing unless good cause is found to issue a preliminary injunction. In this case the matter was set for hearing because the petition does not on its face show that irreparable harm would result unless the Respondent [Alltel] was enjoined. The petition itself constitutes the underlying complaint in Tribal Court.

2.     Failure of the Petitioner [the Tribe] to properly serve the Defendant is grounds for a continuance or dismissal without prejudice. The failure of the Petitioner to serve the proper parties is procedurally curable and is not grounds for denying the Court of its jurisdiction.

3.     The fact that the Respondent is invoking arbitration provisions of the Tate Woglaka Service Agreement between the Oglala Sioux Tribe and WWC License, LLC to provide wireless telephone service to the residents of the Pine Ridge Indian Reservation is sufficient evidence for this Court to conclude that the Respondent and its predecessors have been and are involved in doing business on the Pine Ridge Reservation. This fact also satisfies the first exception in the <u>Montana v. United States</u> [7] case that recognizes the Tribe's jurisdiction over nonmembers who are involved in consensual relations with the Tribe.

4.     Respondent relies on the arbitration clause in the TWSA which provides that all disputes, claims and controversies arising from the agreement shall be resolved by binding arbitration. This does not preclude the Tribal Court from ordering the parties to arbitration as agreed. The Court must first find that it has jurisdiction, not to arbitrate the dispute, but to order the parties to comply with all conditions of the agreement.

5.     The territorial jurisdictional limits of the Tribal Court extend to the boundaries of the Pine Ridge Indian Reservation and the Court recognizes the exclusive federal interests that are shared with a tribal interest. In that sense, there is a common nucleus of operative facts which give rise to ancillary jurisdiction over tribal interests that are subject exclusively to Tribal jurisdiction. In that regard the Tribal Court is not

---

[7] 450 U.S. 544 (1981).

predisposed to intrude into areas that are regulated exclusively by federal law and federal agencies. This argument does not divest the Tribal Court of its ancillary jurisdiction in this case.

Id. For these reasons, Chief Judge Lee held that Tribal Court had "jurisdiction over the Tribal matters involved in the dispute" and denied Alltel's motion to dismiss. Id.

## DISCUSSION

**DEFENDANT'S MOTION TO DISMISS**

Defendant asserts the following grounds for its motion to dismiss pursuant to Rule 12 (b)(1) and (6):

1.   The Court lacks jurisdiction to hear Plaintiff's complaint because the Tribe enjoys federal common law sovereign immunity from suit and has not waived its sovereign immunity or otherwise consented to the adjudication of any of Plaintiff's claims in this civil action; and

2.   The complaint fails to state a claim upon which relief can be granted because Plaintiff did not receive a valid assignment of Western Wireless' rights under the service agreement upon which it relies in this action and therefore cannot claim any rights under the agreement until it obtains the requisite tribal consent to make the agreement valid and binding between the parties.

(Docket 33). In resistance to defendant's motion, plaintiff asserts the following grounds which are summarized:

1.   Defendant's motion attempts to rely on assertions of fact outside the pleadings without offering any evidence in support of the motion;

14

2.    Defendant's motion relies on erroneous assertions
      of fact; and

3.    Defendant's waiver of sovereign immunity in the
      Service Agreement extends to plaintiff's lawsuit in
      this court.

(Docket 41). Plaintiff further asserts the court must consider the allegations

of the amended complaint as part of the analysis of defendant's motion to

dismiss. <u>Id.</u>

Rule 12 provides in part:

(b)    . . . a party may assert the following defenses by motion:
       (1)    lack of subject-matter jurisdiction;
       . . . .
       (6)    failure to state a claim upon which
              relief can be granted . . . .

       . . . A motion asserting any of these defenses must be made
       before pleading if a responsive pleading is allowed . . . . No
       defense or objection is waived by joining it with one or more
       other defenses or objections in a responsive pleading or in
       a motion.

"In order to properly dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1), the complaint must be successfully challenged on its

face or on the factual truthfulness of its averments." <u>Titus v. Sullivan</u>, 4

F.3d 590, 593 (8th Cir. 1993) (internal citation omitted). "In a facial

challenge to jurisdiction, all of the factual allegations concerning jurisdiction

are presumed to be true and the motion [to dismiss] is successful if the

plaintiff fails to allege an element necessary for subject matter jurisdiction."

<u>Id.</u> (internal citation omitted).

"In assessing a motion under Rule 12(b)(6), a court should . . . not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" Holloway v. Lockhart, 792 F.2d 760, 761 (8th Cir. 1986) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court must presume that the factual allegations of the complaint are true and accord all reasonable inferences from those facts to the non-moving party." Id. "The court may not consider materials outside the complaint in deciding a motion under Rule 12(b)(6) unless the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." Id.

In considering defendant's motion to dismiss, the Tribe has not presented any affidavits or documentation by which the court could properly deem the motion as one for summary judgment. See Rule 56(b) and D.S.D. Civ. LR 56.1(A).[8] Therefore, the court will not consider defendant's motion to dismiss as a motion for summary judgment.

"It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) (citation

---

[8]LR 56.1(A) provides: "All motions for summary judgment shall be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Each material fact shall be presented in a separate numbered statement with an appropriate citation to the record in the case."

omitted).  "[I]n cases where a plaintiff has filed an amended complaint, federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended complaint."  Id.  For purposes of considering defendant's motion to dismiss under subsections (b)(1) or (b)(6) of Rule 12, all of plaintiff's factual allegations from its first amended complaint are deemed to be true.  Titus, 4 F.3d at 593.

It is undisputed that the Tribe entered into a contract with WWC LLC as of August 21, 2000.  The Service Agreement is attached to plaintiff's amended complaint as Exhibit A.  (Docket 40-2).  The purpose of this contract was to provide wireless telecommunication services to the residents of the Pine Ridge Indian Reservation.  (Docket 40, ¶ 14).

WWC LLC is a subsidiary of Western Wireless Corporation ("WWC"). (Docket 40, ¶ 14).  Alltel acquired WWC in 2005.  (Docket 40, ¶ 16).  WWC LLC is an "indirect subsidiary" of Alltel.  (Docket 40, ¶ 2).  Stated another way, Alltel is an "intermediate parent" of WWC LLC.  (Docket 40, ¶ 18).  After Alltel acquired WWC, neither the Service Agreement nor the telecommunications infrastructure nor the federal licenses were assigned or transferred from WWC LLC to any other entity.  (Docket 40, ¶ 17).

It is settled law that a tribe's waiver of sovereign immunity from suit "cannot be implied but must be unequivocally expressed."  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) (internal citations omitted);

17

Rosebud Sioux Tribe v. Val-U Const. Co. of South Dakota, Inc., 50 F.3d 560, 562 (8th Cir. 1995) (citing Santa Clara Pueblo, 436 U.S. at 58).  The tribe "has full authority to limit any waiver of immunity to which it consents." Oglala Sioux Tribe v. C & W Enterprises, Inc., 542 F.3d 224, 231 (8th Cir. 2008).  Waivers of tribal sovereign immunity "are to be strictly construed in favor of the Tribe . . . ." Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1245 (8th Cir. 1995).

The Service Agreement between the Tribe and WWC LCC contains a limited waiver of sovereign immunity.  Section 17(A) of the Service Agreement provides:

> (A) Sovereign Immunity.  Nothing in this Agreement shall be deemed to be a waiver of the OGLALA SIOUX TRIBE's sovereign immunity from suit, except that the OGLALA SIOUX TRIBE hereby provides a limited waiver of sovereign immunity and consents to be sued should an action be commenced to determine and enforce the obligations of the Parties under this Agreement or the Other Agreements, and provided further that OGLALA SIOUX TRIBE's consent to suit is only as to arbitration and court action initiated consistent with this Agreement and the Other Agreements. OGLALA SIOUX TRIBE agrees not to take any action that would result in the revocation or modification of the limited wavier granted by this Paragraph 17.

(Docket 40-2, p. 19).  It is the Tribe's position this limited waiver of sovereign immunity extends only to WWC LLC and not to Alltel.  (Docket 34, pp. 4-5).  Tied to the sovereign immunity issue is Section 17(B) of the Service Agreement which addresses arbitration.  That provision states:

> The Parties agree that all disputes, claims and controversies between them, whether individual, joint, or class in nature, arising from this Agreement, the Other Agreements or otherwise in connection therewith, including, without limitation, contract disputes and tort claims, shall be resolved by binding arbitration pursuant to the Commercial Rules of the American Arbitration Association ("AAA"). . . .OGLALA SIOUX TRIBE further waives and agrees not to assert any doctrine requiring exhaustion of tribal court remedies prior to proceeding with arbitration . . . .

(Docket 40-2, pp. 19-20).

The court recognizes there are some limited circumstances in which a nonsignatory party may enforce an arbitration provision.

> A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when the relationship between the signatory and nonsignatory . . . is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. Another is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory.

CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005) (internal quotations and citations omitted). The first situation "relies on agency and related principles to allow a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement." PRM Energy Systems, Inc. v. Primenergy, LLC, 592 F.3d 830, 834 (8th Cir. 2010) (citing CD Partners, 424 F.3d at 798). The "second [situation] relies loosely on principles of equitable estoppel, broadly encompasses more than one test for

19

its application, and has been termed 'alternative estoppel.' " Id. (citing CD Partners, 424 F.3d at 799). "Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of the same agreement." Id. at 835. "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." CD Partners, 424 F.3d at 798 (internal quotations omitted).

On October 21, 2009, the Tribe filed the "Petition for Preliminary Injunction and Request for Hearing" against Alltel in Oglala Sioux Tribal Court, Civ. 09-0673. (Docket 40, ¶ 32). Through this petition, the Tribe asked the Tribal Court to enter an order "enjoining [Alltel] from selling the wireless spectrum, antenna towers, and associated electronics located on the Pine Ridge reservation . . . until such time as the issue [as] to Tribal approval of the assignment of the [Service Agreement] . . . is resolved." (Docket 40, ¶ 33) (internal citation omitted).

On March 1, 2010, the OST PUC filed in Tribal Court a Motion for Preliminary Injunction and for Hearing in a separate action, Civ. 10-0104, captioned Oglala Sioux Tribe v. Alltel Communications, LLC and Cellco

Partnership dba Verizon Wireless. (Docket 40, ¶ 50). In that case, the OST PUC again asserted that Alltel was "attempting to transfer property on the Reservation used to provide essential telephone service to . . . (AT&T) without obtaining Tribal approval, as required by the [Service Agreement]." (Docket 40-11, p. 1). The remainder of the motion for preliminary injunction recited various sections of the Service Agreement as the basis for the right of the Tribe to seek injunctive relief in Tribal Court. (Docket 40-11).

Applying the CD Partners analysis to the facts asserted in plaintiff's amended complaint, the court finds, for purposes of resolving defendant's motion to dismiss only, Alltel qualifies under both scenarios by which a nonsignatory to an arbitration agreement may seek enforcement of the right to arbitration against a signatory. First, Alltel is closely related to WWC LLC, a signatory to the Service Agreement, such that not allowing Alltel to invoke the arbitration provision in its conflict with the Tribe will eviscerate the entirety of the Service Agreement and its arbitration requirements. Second, in both of its Tribal Court proceedings, the Tribe is relying on the terms of the Service Agreement, both as the basis for its jurisdictional claim that Alltel is engaged in commerce on the Reservation (therefore arguably subject to the jurisdiction of the Tribal Court) and also as a basis for the Tribe's claim that Alltel is seeking to transfer property subject to and in violation of the Service Agreement. The claims in Tribal Court are "so intertwined with the [Service Agreement] containing the arbitration clause

that it would be unfair to allow the [Tribe] to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of the same agreement." PRM Energy Systems, Inc. v. Primenergy, LLC, 592 F.3d at 835.

Because Alltel is entitled in federal court to assert the application of the arbitration paragraph of the Service Agreement, Alltel is likewise entitled to enforce the limited waiver of sovereign immunity which the Tribe granted under the Service Agreement. Alltel is therefore entitled to invoke this court's jurisdiction in accordance with 28 U.S.C. § 1331 and 9 U.S.C. § 4.[9]

On the face of allegations in the amended complaint, if the court determines that Alltel may be entitled to judgment against the Tribe on any one or more of the counts of the amended complaint, defendant is not entitled to dismissal. For these reasons, the Tribe's motion to dismiss under both Rule 12(b)(1) and (6) fails.

**TRIBAL COURT EXHAUSTION**

At the time of the issuance of the order denying Alltel's request for a TRO (Docket 16), the court acknowledged plaintiff's complaint properly established federal jurisdiction pursuant to 28 U.S.C. § 1331 and proper

---

[9]Under 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . ."

venue based on 9 U.S.C. § 4 and 28 U.S.C. § 1391(a). This original ruling was and remains the decision of the court and is premised on <u>Bruce H. Lien Co. v. Three Affiliated Tribes</u>, 93 F.3d 1412 (8th Cir. 1996), and <u>Gaming World International, Ltd., v. White Earth Band of Chippewa Indians</u>, 317 F.3d 840 (8th Cir. 2003). <u>Id.</u>

In <u>Lien</u>, plaintiff was seeking an order to compel arbitration under its gaming management contract with the Three Affiliated Tribes. The contract in that litigation contained both a limited waiver of sovereign immunity provision and a binding arbitration provision similar to the provisions in the Service Agreement. <u>See</u> <u>Lien</u>, 93 F.3d 1415. The Three Affiliated Tribes filed a complaint in its tribal court seeking a declaratory judgment that the binding arbitration contract was null and void and further requesting a preliminary injunction enjoining the arbitration process. <u>Id.</u> at 1415-16. "Lien, by special appearance in Tribal Court, moved to dismiss the complaint for lack of jurisdiction and argued against the appropriateness of the injunction." <u>Id.</u>

While tribal court litigation was pending, Lien filed a complaint in federal court requesting a preliminary injunction to compel arbitration under the management contract and to enjoin the Three Affiliated Tribes and the Tribal Court Judge from interfering with the arbitration process. <u>Id.</u> at 1416. The federal district court denied Lien's request for an injunction

and dismissed its complaint on the belief that the National Indian Gaming Commission ("NIGC") had exclusive jurisdiction over the issues of compliance and validity of the management contract.  Id.  The district court also ruled it had federal question jurisdiction.  Id.  The tribal court's injunction may have been in excess of its own jurisdiction but would preserve the status quo until the NIGC ruled on the validity of the management contract.  Id.

On appeal, as relevant to this instant case, the Lien court concluded the district court had federal question jurisdiction.  Id. at 1421.  However, the court ruled that the district court "should have stayed its proceedings pending a resolution in the first instance in the Tribal Court . . . ."  Id. at 1419.  The court reached that conclusion because the Three Affiliated Tribes were challenging the very validity of the management agreement in tribal court.  Id. at 1421.

The court distinguished Lien from FGS Constructors v. Carlow, 64 F.3d 1230 (8th Cir. 1995), where exhaustion of tribal court remedies was not required.  Id.  In Carlow, the tribe was not challenging the validity of a contract, but rather the agreement at issue had a provision allowing for either federal court or tribal court litigation of any disputes.  "By this forum selection clause, the Tribe agreed that disputes need not be litigated in tribal court.  The district court . . . had no significant comity reason to defer this

. . . litigation first to the tribal court." Lien, 93 F.3d at 1421 (citing Carlow, 63 F.3d at 1233). Because the validity of the management contract had to be addressed first, the court in Lien determined the validity issue should be resolved in tribal court in the first instance. Id. at 1421.

In this case, the Tribe has not challenged the validity of the Service Agreement. Rather, in Tribal Court the Tribe is seeking to maintain the status quo "until such time as the issue of Tribal approval of the assignment of the [Service Agreement] . . . is resolved." (Docket 40-10 at p. 6).

The Tribe claims that granting Alltel a preliminary injunction will cause injury to its sovereign interests. (PIT, p. 103).

> The tribe . . . will suffer irreparable harm to its sovereign interests in [not] having the tribal court determine its own jurisdiction and adjudicate the dispute pending before the tribal court. Tribal courts play a vital role in self-government and federal courts exercise [of] jurisdiction over matters related to reservation affairs can impair the authority of tribal courts . . . . Surely enjoining the tribal court impairs that authority even more.

Id. The court recognizes that the promotion of self-government and self-determination by the Tribe requires the court to give the Tribal Court "the first opportunity to evaluate the factual and legal bases for the challenge to its jurisdiction." Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 16 (1987). See also National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845 (1985); Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978). But

"[e]xhaustion is required as a matter of comity, not as a jurisdictional prerequisite." LaPlante, 480 U.S. at 16 fn 8.

In certain situations, "preemptive federal statutes may serve to relieve a party from exhausting tribal court remedies." Lien, 93 F.3d at 1421 (citing N.S.P. v. Prairie Island, 991 F.2d 458, 463 (8th Cir. 1993). "Congress assigned to the Federal Communications Commission . . . exclusive authority to grant licenses [under the FCA]." Metro Broad., Inc. v. FCC, 497 U.S. 547, 553 (1990), *overruled on other grounds by* Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995); Red Lion Broad. Co. v. FCC, 395 U.S. 367, 376-77 (1969) (the "Federal Radio Commission [predecessor of the FCC] was established to allocate frequencies among competing applicants in a manner responsive to the public convenience, interest, or necessity.") (internal quotation omitted).

The Federal Communications Act ("FCA"), 47 U.S.C. § 151 *et seq.*, established the nationwide system for the regulation of the electromagnetic spectrum for radio transmissions. Congress delegated the authority, solely and exclusively, to the FCC to license the use of radio transmissions. 47 U.S.C. § 301. "The Tribe has no recourse to its own courts for vindication of its [Federal Communication Act] based claim and - like any other plaintiff - could choose only between filing a complaint with the FCC or suing [Alltel] in federal district court."  AT&T Corporation v. Coeur D'Alene Tribe, 295

F.3d 899, 905 (9th Cir. 2002). "By its express language, [the FCA] established concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum–be it state, tribal or otherwise." Id.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and particularly Section 4 of that Act, gives the federal district court authority to compel arbitration. See 9 U.S.C. § 4. Exhaustion of tribal remedies is not a prerequisite before Alltel can seek an order compelling the Tribe to arbitrate. Carlow, supra; Lien, supra.

Also of concern to the court is the mandate of the Consent Decree which requires that all of the divestiture assets, which would include cell towers, switches, communication equipment and licenses, be sold by Verizon to one purchaser.[10] This court must respect the Tribal Court, and the right of that court to issue decisions within the scope of its authority. This court must also recognize and give judicial comity to the action and decision of the federal district court for the District of Columbia as expressed in the Consent Decree. Judicial comity is defined as "[t]he respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions." BLACK'S LAW DICTIONARY 262 (7th ed. 1999). "A final judgment . . . if rendered by a court

---

[10]See footnote 3, supra.

of adjudicatory authority over the subject matter and the persons governed by the judgment, qualifies for recognition throughout the land." Baker by Thomas v. General Motors Corporation, 522 U.S. 222, 223 (1998).

Finally, the Tribe's concession in Section 17(B) of the Service Agreement that "it waives and agrees not to assert any doctrine requiring exhaustion of tribal court remedies prior to proceeding with arbitration" also weighs heavily in this court's consideration. When Alltel seeks to compel the Tribe into arbitration through this federal court action, the Tribe asserts failure to exhaust tribal court remedies as one of its defenses. Authority to mandate arbitration is and remains a decision solely within the jurisdiction of the federal district court in this instance. See Vaden v. Discover Bank, ___ U.S. ___, 129 S. Ct. 1262 (2009). The "underlying substantive controversy" is properly a federal question and places jurisdiction under 9 U.S.C. § 4 in the federal district court. Id. at S. Ct. 1273.

Chief Judge Lee asserted the Tribal Court has "ancillary jurisdiction over tribal interests that are subject exclusively to Tribal jurisdiction." (Docket 80-1 at p. 3). "[I]t bears repeating that under the exhaustion doctrine, the tribal courts themselves are given the first opportunity to address their jurisdiction . . . ." Lien, 93 F.3d at 1421 (citing National Farmers Union, 471 U.S. at 857). The Tribal Court is entitled to continue to address and resolve those "tribal interests that are subject exclusively to

Tribal jurisdiction." (Docket 80-1 at p. 2). This deference would include exhaustion of any appeal rights which the parties may have in the Oglala Sioux Tribe Supreme Court. "As a jurisdictional inquiry, appeal of this issue may [ultimately] be had in the federal district court." Lien, 93 F.3d at 1421. Because the Tribal Court has expressed its intent to assume limited jurisdiction over specific issues, this federal court will not interfere with that process.

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRIBAL COURT LITIGATION

Because the court is recognizing comity so that the Tribe may pursue its "limited issues" in Tribal Court under the authority of Lien, the court must deny Alltel's request for a preliminary injunction.

## ARBITRATION

In Count II of its amended complaint (Docket 40), Alltel asked the court to order the Tribe into arbitration under Section 4 of the Federal Arbitration Act. 9 U.S.C. § 4. The Service Agreement establishes certain boundaries for the conduct of the parties in the event a dispute arises during the the operation of the agreement. Section 17(B) of the Service Agreement establishes arbitration as the exclusive forum for dispute resolution. Arbitration is a bargained-for and negotiated forum for the resolution of disputes with the Tribe.

During oral argument at the May 7, 2010, preliminary injunction hearing, counsel for the Tribe stated, "the tribe is not objecting to ultimately to take the matter to arbitration. The tribe is just trying to maintain its status quo until one of the parties initiates the arbitration process, which based on everything we have heard today has not occurred." (PIT, p. 93). "A statement by a party's attorney can be admissible as an admission by a party opponent if it is relevant." Structural Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987, 996 (8th Cir. 2008). Counsel's "statements are admissions by a party opponent and are clearly admissible pursuant to [Fed. R. Evid.] 801(d)(2)(D)." Harris v. Steelweld Equipment Company, Inc., 869 F.2d 396, 403 (8th Cir. 1989). This statement by counsel is an admission by the Tribe such that if there is any doubt concerning the mandate of arbitration, as dictated by Section 17(B) of the Service Agreement, that doubt should be resolved in favor of arbitration. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983) (the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

The Tribe executed the Service Agreement and agreed to use arbitration as the exclusive forum for resolution of any dispute which may arise during the life of the contract. The court recognizes the obligations of

parties to settle their disagreements through the arbitration process if that is the forum they chose at the time of execution of their contract.  <u>PRM Energy Systems, Inc. v. Primenergy, LLC</u>, 592 F.3d 830 (8th Cir. 2010); <u>CD Partners, LLC v. Grizzle</u>, 424 F.3d 795 (8th Cir. 2005).  "[F]ederal policy favors arbitration."  <u>Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.</u>, 118 F.3d 619, 621 (8th Cir. 1997) (citing <u>Moses H. Cone Memorial Hospital</u>, 460 U.S. at 24-25).

The Tribe is not a newcomer to litigation relating to its obligation to honor arbitration clauses in contracts.  "In deciding [<u>C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe</u>, 532 U.S. 411, 418(2001)], the Supreme Court favorably cited multiple lower court cases finding tribes subject to state court suits premised on arbitration agreements alone."[11] <u>Oglala Sioux Tribe v. C & W Enterprises, Inc.</u>, 542 F.3d 224, 233 (8th Cir. 2008).

Whether the Tribe's withholding of consent to the anticipated transfer of the Service Agreement to AT&T is reasonable or unreasonable is a question to be resolved in arbitration.  The Tribe's claim that it is entitled to purchase the assets, equipment and hardware of WWC LLC on the Pine

---

[11]Among those cases cited in <u>C & W Enterprises</u> were: <u>Rosebud Sioux Tribe v. Val-U Constr. Co.</u>, 50 F.3d 560, 562 (8th Cir.1995); <u>Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.</u>, 86 F.3d 656, 661 (7th Cir. 1996); <u>Native Village of Eyak v. GC Contractors</u>, 658 P.2d 756, 760 (Alaska 1983); <u>Val/Del, Inc. v. Superior Court</u>, 703 P.2d 502 (1985).

Ridge Indian Reservation is likewise an issue which must ultimately be resolved in arbitration.

The court finds that both parties acknowledge their obligation to arbitrate their differences under Section 17(B) of the Service Agreement. The court, therefore, has the authority to compel the parties to participate in arbitration as dictated by the Service Agreement.

**AT&T'S MOTION TO INTERVENE**

AT&T has filed a motion to intervene (Docket 69) as a matter of right under Fed. R. Civ. P. 24(a)(2) or, in the alternative, permissively under Rule 24(b). Under Rule 24(a)(2), a motion to intervene must be granted if the party satisfies a three-part test:

> 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties.

United States v. Union Electric Co., 64 F.3d 1152, 1160 (8th Cir. 1995) (internal citations omitted). While the court may agree AT&T satisfies the first part of this test, the court concludes, based on the rulings hereinabove, the interests of AT&T will not be impaired by the court's disposition of the litigation among the present parties. Under this court's rulings, the interests of AT&T will be adequately protected. Therefore, the court denies the motion to intervene (Docket 69) as moot.

32

## CONCLUSION

Based on the foregoing discussion, it is hereby

ORDERED that defendant's motions to dismiss (Dockets 33 and 56) are denied.

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary injunction (Docket 4) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for declaratory judgment as to Count I of the amended complaint (Docket 40) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary and permanent injunction as to Count III of the amended complaint (Docket 40) is denied.

IT IS FURTHER ORDERED that plaintiff's request for an order compelling the Tribe to arbitrate the Service Agreement in Count II of the amended complaint (Docket 40) is granted.

IT IS FURTHER ORDERED that the parties, Alltel Communications LLC and the Oglala Sioux Tribe, be and they are hereby required to proceed into arbitration in accordance with the provisions of Section 17(B) of the Service Agreement within ten (10) days of the date of this order.

IT IS FURTHER ORDERED that the motion to intervene (Docket 69) by AT&T Mobility LLC is denied as moot.

May 18, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
_____
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE